Present:  Kinser, C.J., Lemons, Goodwyn, and Millette, JJ.,
and Russell, Lacy, and Koontz, S.JJ.[*]

TAVORIS M. COURTNEY

v.  Record No. 100776     OPINION BY JUSTICE DONALD W. LEMONS
                                        March 4, 2011
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals
erred when it affirmed the conviction of Tavoris M. Courtney
("Courtney") for use or display of a firearm in the commission
of a felony under Code § 18.2-53.1.

I.  Facts and Proceedings Below

On January 11, 2008, Laura Nelson ("Nelson") was driving
to her home in Chesterfield County around 10:00 p.m.  She
noticed that a vehicle turned into her subdivision and
followed her until she pulled into her driveway.  As she
parked and opened her car door, a masked man approached and
told her to get back into her vehicle.  She described the man
as "a black male with a hood over a sweatshirt . . . and a
bandana over his face," exposing only his eyes.

When Nelson did not immediately comply, her assailant,
later identified as Courtney, told her to "[q]uit looking at
me and get back in the car."  When Nelson refused, Courtney

    [*] Justice Koontz presided and participated in the hearing
and decision of this case prior to the effective date of his
retirement on February 1, 2011; Justice Kinser was sworn in as
Chief Justice on February 1, 2011.

said, "I have a gun, get back in the car." Nelson never saw a gun or the item that Courtney was holding under his shirt, but she believed Courtney had a gun and said that she was "very scared." Nelson told Courtney that that he would "have to kill [her] or shoot [her] because [she was] not getting back in the car." She remained where she was but also pressed the vehicle's horn. Courtney took Nelson's two purses and her cellular phone, and he ran away. At that point, Nelson also saw a second man running away, and she chased both men down the street. She pursued both men while screaming for help, and her neighbor, Scott Rittenhouse ("Rittenhouse"), heard Nelson yelling. Rittenhouse ran to the street and tackled the second man on the ground. Courtney then kicked Rittenhouse and hit him with Nelson's purse. Unable to free the second man, Courtney got into a waiting vehicle being driven by a third person and left the scene.

Courtney was apprehended in the vehicle by police at a gas station approximately five minutes later and three miles from Nelson's home. Police recovered Nelson's cellular phone in the bathroom trashcan of the gas station, and her purses were later recovered down the street in her neighborhood. During a search of the vehicle, police recovered hooded sweatshirts, two bandanas, and a "small revolver-type handgun with an orange tip on the end of it." The officer described

2

it as a "cap gun" and said that it "looks like, obviously, a toy gun."

The trial court, without a jury, found Courtney guilty of robbery and use of a firearm in the commission of a robbery. Based on the evidence showing that Nelson "had a bona fide belief that [Courtney] had a firearm" and that Courtney "threatened [Nelson] and instilled fear in [Nelson] that she might be shot if she did not cooperate," the trial court held that the evidence was sufficient to sustain both the robbery and firearms convictions under Code §§ 18.2-58 and 18.2-53.1.

A three-judge panel of the Court of Appeals of Virginia, in an unpublished opinion, affirmed Courtney's conviction for use of a firearm in the commission of a robbery. Based upon the evidence that Courtney stated he had a gun and Nelson's belief that he had one, the Court of Appeals held that the evidence was sufficient to support his conviction under Code § 18.2-53.1. Id., slip op. at 5. Courtney timely filed his notice of appeal to this Court.

II. Analysis

A. Standard of Review

On appeal, we apply a de novo standard of review when addressing a question of statutory construction. Harris v. Commonwealth, 274 Va. 409, 413, 650 S.E.2d 89, 91 (2007); Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96,

3

104, 639 S.E.2d 174, 178 (2007).  Additionally, when

considering the sufficiency of the evidence to sustain a

conviction,

> this Court reviews "the evidence in the light
> most favorable to the prevailing party at trial
> and consider[s] all inferences fairly deducible
> from that evidence."  This Court will only
> reverse the judgment of the trial court if the
> judgment " 'is plainly wrong or without
> evidence to support it.' "  "If there is
> evidence to support the convictions, the
> reviewing court is not permitted to substitute
> its own judgment, even if its opinion might
> differ from the conclusions reached by the
> finder of fact at the trial."

Clark v. Commonwealth, 279 Va. 636, 640-41, 691 S.E.2d 786,

788 (2010) (citations omitted).

### B. Display or Use of a Firearm
### in the Commission of a Felony

Courtney contends that the Court of Appeals erred in

holding that the evidence was sufficient to support his

conviction for use or display of a firearm in the commission

of a robbery under Code § 18.2-53.1.  For the reasons set

forth below, we disagree.

It is important to state what this case is not about. It

is not about whether a particular toy gun resembles an actual

gun.  Nelson did not see the object used by Courtney;

consequently, the question of resemblance is irrelevant.

In Powell v. Commonwealth, 268 Va. 233, 237, 602 S.E.2d

119, 121 (2004), we affirmed a conviction under Code § 18.2-

4

53.1 despite the fact that the victims did not see a firearm and no firearm was ever recovered.  Powell robbed a clothing store and "informed the employees that he had a pistol in his pocket," and he kept his hand in his pocket during the course of the robbery.  Id. at 235, 602 S.E.2d at 120.  He was apprehended by police only minutes later in a taxicab, but no pistol was located.  Id.  Despite the fact that no pistol was seen or found, we held that the evidence showing that Powell was "fidgety," kept his hand in his pocket, told the victims he had a pistol, and threatened to "hurt" them if they did not follow his instructions was sufficient to support his conviction.  Id.  We held that

> evidence that no gun was found conflicts with Powell's statements and actions during the commission of the offenses.  The trier of fact resolved this conflict against Powell, and in doing so, necessarily concluded that Powell had a gun.  In other words, resolution of the factual conflict in this manner established beyond a reasonable doubt that Powell had a gun.

Id.

In her argument to the trial court, the Commonwealth's Attorney stated with regard to the existence of an actual firearm:

> We don't know what the defendant actually had under his clothes.  The police did later recover the gun that you see photographed there, which is not a real gun.  However, the victim would have no way of knowing that.  She didn't know if he had a gun, a real gun, a play gun,

5

what he had under there.  He could have had a real gun for all we know.  He certainly had an opportunity to discard one.

The Commonwealth's Attorney additionally stated that:

Your Honor, what I'll start with is defense counsel said that no one believes that this was a real gun. We, you, defense counsel and I didn't believe that this was a real gun, but I would submit to you that the victim did. She never saw the pistol, she never saw what was recovered in this car. She knows that the defendant told her that he had a gun and that he had something under his shirt. She believed it was a real gun.

Courtney argues that the Commonwealth conceded that an actual firearm was not used in the commission of the offense. Considering the Commonwealth's argument in context, we do not agree.  Clearly, the Commonwealth conceded that an actual firearm was not recovered.  Nonetheless, the Commonwealth consistently maintained that the evidence was in conflict concerning whether Courtney used an actual firearm in the commission of the robbery. The Commonwealth argued that Courtney's statement "I have a gun," and that he would "have to kill" or "shoot" the victim if she continued to disregard his commands, combined with his opportunity to discard an actual firearm, were sufficient to find him guilty of use or display of a firearm in the commission of a felony under Code § 18.2-53.1.

The conflict in the evidence in this case is precisely the situation we considered in Powell.  We review the

6

sufficiency of the evidence based upon the statutory standard found in Code § 8.01-680:

> When a case, civil or criminal, is tried by a jury and a party objects to the judgment or action of the court in granting or refusing to grant a new trial on a motion to set aside the verdict of a jury on the ground that it is contrary to the evidence, or when a case is decided by a court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.

As we have said on many occasions, "[I]f there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998).

### III.  Conclusion

For the reasons stated, we hold that the Court of Appeals did not err in affirming Courtney's conviction for use or display of a firearm in the commission of a felony. Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.

SENIOR JUSTICE KOONTZ, dissenting.

I respectfully dissent.  In my view, a "toy gun" is neither a "firearm" or "such weapon" contemplated by the plain language of Code § 18.2-53.1.  Today, however, the majority of this Court judicially broadens the scope of this statute beyond the plain meaning of its language to permit a conviction pursuant to this statute where the evidence establishes that the defendant used a toy gun lacking the appearance of an actual gun to commit a robbery.  I am unwilling to ascribe to the General Assembly an intent to include such toy guns within the sweep of this criminal statute.

The principles of appellate review applicable to the question of statutory construction in this case are well-established.  "[W]e determine the General Assembly's intent from the words contained in the statute."  Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004) (quoting Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003)).  "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction."  Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998).  "When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly

8

did not mean what it actually has stated." Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009). Finally, a court must strictly construe a penal statute against the Commonwealth and limit its application to cases falling clearly within the statute. Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

Code § 18.2-53.1, in pertinent part, provides that: "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery . . . . Violation of this section shall constitute a separate and distinct felony." (Emphasis added.)

This statute is not ambiguous. Its plain language makes no reference to a toy gun. Moreover, a toy gun is not a "firearm" because a toy gun is generally understood and accepted to be an object designed, made, and intended for amusement and not an object designed, made, and intended to have the capability of expelling a projectile by explosion as is the case of a "pistol, shotgun, rifle, or other firearm." See, e.g., Code § 18.2-433.1 (defining a "firearm" as "any weapon that will or is designed to or may readily be converted to expel single or multiple projectiles by the action of an explosion of a combustible material"); Armstrong v.

9

<u>Commonwealth</u>, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002)("to sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion"). Likewise, a toy gun is not a "weapon" because a toy gun lacks the capability, common to a pistol, shotgun or rifle, to inflict physical harm.

However, in <u>Holloman v. Commonwealth</u>, 221 Va. 196, 197-99, 269 S.E.2d 356, 357-58 (1980), a case involving a spring-operated BB pistol that appeared in size, weight, and shape to be a .45 caliber automatic pistol, we held that a firearm under Code § 18.2-53.1 includes "an instrument which give[s] the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder." We explained that "[t]he statute not only is aimed at preventing actual physical injury or death but also is designed to discourage criminal conduct that produces fear of physical harm." <u>Id.</u> at 198, 269 S.E.2d at 358. The defendant had asserted that a "firearm" is a weapon that expels a projectile by force of gunpowder and, thus, a spring-operated BB gun did not come within the scope of Code § 18.2-53.1. <u>Id.</u> at 197, 269 S.E.2d at 357. While we expressly rejected that assertion, our decision in <u>Holloman</u>

10

does not purport to sweep all toy guns within the scope of Code § 18.2-53.1.

The majority's analysis in the present case appears to be based upon two initial conclusions. First, the majority states that it is "important" that this case is not about whether a particular toy gun resembles an actual gun because the victim of the robbery did not see the object used by the defendant. Next, the majority concludes that the Commonwealth did not concede that the defendant used a toy gun in the commission of the robbery and only conceded that an actual firearm was not recovered.

In my view, this case is about whether a particular toy gun resembles an actual firearm. It is axiomatic that the Commonwealth's case cannot rise above its own evidence. In support of the alleged violation of Code § 18.2-53.1, the Commonwealth introduced a photograph of the gun recovered by the police upon arresting the defendant shortly after the robbery. Although the victim had not seen that gun, the arresting officer testified on behalf of the Commonwealth that the gun "looks like, obviously, a toy gun." In short, the Commonwealth's case was premised entirely upon the defendant's use of this particular gun while committing the robbery. Indeed, the Commonwealth would have had no other logical reason to introduce this evidence.

11

In the present case, the Commonwealth both at trial and on appeal has relied on our decision in Powell v. Commonwealth, 268 Va. 233, 237, 602 S.E.2d 119, 121 (2004). In Powell, we affirmed a conviction under Code § 18.2-53.1 even though the victim of a robbery did not see a firearm and no firearm was ever recovered. Id. Powell, the defendant, had told the victim that he had a pistol in his pocket and he kept his hand in his pocket during the course of the robbery. Id. at 235, 602 S.E.2d at 120. He told the victim not to move "and won't nobody get hurt." Id. Powell was arrested a short time after the robbery in a taxicab, and no pistol was ever recovered by the police. Id. Powell confessed to the robbery offense, but maintained that he had not had a pistol during the robbery. Id. A majority of this Court held that the evidence was sufficient to establish beyond a reasonable doubt that in fact Powell had a pistol during the course of the robbery. Id. at 237, 602 S.E.2d at 121.

Like in Powell, the defendant in this case stated that he had a gun and although the victim did not see a gun, the victim was reasonably threatened. Thus, there is no question the evidence was sufficient to sustain the defendant's conviction for robbery of the victim. That determination, however, does not resolve the issue of whether the facts support a separate conviction of the defendant for violation

12

of Code § 18.2-53.1 because, unlike in Powell, here the Commonwealth introduced evidence regarding the particular "gun" the defendant used in the commission of the robbery. That "gun" was a toy gun; it was not a "firearm." Additionally, the Commonwealth's evidence established that this toy gun "looks like" a toy gun. A toy gun that looks like a toy gun logically does not also have the appearance of having the capability of an actual firearm.

Although not addressed by the majority here, in Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994), in construing Code § 18.2-53.1, this Court held that "the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." In that case, the robbery victim did not see a gun although she thought that the accused possessed a gun. Id. at 217, 441 S.E.2d at 343. No gun was ever recovered. Id. This Court expressly rejected the Commonwealth's assertion that the evidence is sufficient to support a conviction under Code § 18.2-53.1 when the victim "is made to feel that an assailant has a firearm, and reacts in response to that perception." Id. (emphasis in original). Yarborough clearly does not support the majority's reasoning

13

that the evidence was sufficient in the present case to support the defendant's conviction under Code § 18.2-53.1 on the premise essentially that the defendant stated that he had a gun, the victim believed that he had a gun, and the victim was "very scared."

In the final analysis, the majority is left to base its decision that the Commonwealth's evidence in this case is sufficient to support the defendant's conviction under Code § 18.2-53.1 on the premise that the defendant had an "opportunity to discard an actual firearm" sometime prior to his arrest shortly after the robbery. Significantly, even the Commonwealth's Attorney in that regard could only assert that "[the defendant] could have had a real gun for all we know." In light of the Commonwealth's evidence regarding the toy gun recovered by the police when the defendant was arrested, it is pure speculation that the defendant also had an actual firearm in addition to a toy gun and discarded only the former as he fled from the scene of the robbery. It is well-settled that speculation does not amount to the proof beyond a reasonable doubt which is required for a defendant to be convicted of a crime.

It bears repeating that Code § 18.2-53.1, as pertinent here, prohibits the use or attempt to use any pistol, shotgun, rifle, or other firearm while committing robbery. In

14

Holloman, which involved the use of a BB pistol, we held that an instrument which gives the appearance of having a firing capability is a "firearm" contemplated by Code § 18.2-53.1 because the statute has two purposes; one of which is to discourage criminal conduct that produces fear of physical harm.  Id. at 198-99, 269 S.E.2d at 358.  And in Yarborough we expressly held that the Commonwealth must prove that the accused actually had such a firearm, as defined in Holloman, in his possession while committing robbery.  247 Va. at 218, 441 S.E.2d at 343-44.  The plain meaning of the language in Code § 18.2-53.1 evinces a legislative intent to include only the use or display of a pistol, shotgun, rifle or other firearm that gives the appearance of having the capability of firing a projectile.  Our prior decisions have been consistent with that interpretation of this statute.

In sum, if a particular gun does not have the capability of firing a projectile and does not adequately resemble an actual gun, then such a gun does not come within our interpretation of Code § 18.2-53.1 in either Holloman or Yarborough.  In the present case, there is direct evidence that the defendant while committing robbery possessed and used a toy gun which did not have the appearance of an actual firearm.  There is no evidence the defendant possessed and used an actual firearm and at some point discarded that

15

firearm.  That the defendant stated to the victim of the robbery that he had a gun does not alter the fact that the gun he possessed was not an actual firearm.  It was a toy.  The evidence in this case falls far short of proof beyond a reasonable doubt that the toy gun adequately resembled an actual firearm and, thus, the evidence is insufficient to support the defendant's conviction under Code § 18.2-53.1.

For these reasons, I would reverse the judgment of the Court of Appeals upholding the conviction of Courtney under Code § 18.2-53.1 and vacate that conviction.